**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

SANTIANO RIVERA,

        Appellant,

      v.

DEPARTMENT OF AGRICULTURE,

        Agency.

DOCKET NUMBER
SF-0752-20-0711-I-2

DATE: August 21, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Lesa L. Donnelly</u>, Anderson, California, for the appellant.

<u>Rachel Trafican</u>, Esquire, and <u>Marcus Mitchell</u>, Esquire, Albuquerque, New Mexico, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the agency's removal action. For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the initial decision, and DO NOT SUSTAIN the appellant's removal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

¶2    The appellant was a GS-09 Natural Resource Specialist with the agency's San Bernardino National Forest.  *Rivera v. Department of Agriculture*, MSPB Docket No. SF-0752-20-0711-I-1, Initial Appeal File (IAF), Tab 7 at 14-15.  On January 6, 2020, the agency proposed to remove him based on charges of conduct unbecoming and lack of candor.  *Id.* at 37-39.  The proposal stemmed from the appellant's arrest by a county sheriff's office and resulting incarceration between September 29 and 30, 2019, while on detail to the position of GS-11 Realty Specialist at the agency's Mt. Hood National Forest.  *Id.* at 37, 39-40; *Rivera v. Department of Agriculture*, MSPB Docket No. SF-0752-20-0711-I-2, Appeal File (I-2 AF), Tab 3 at 41.  The agency alleged that the appellant's conduct during his September 29, 2019 arrest was unbecoming because he pounded his head on a plastic window inside the patrol car, yelled, and accused the officers, without evidence, of arresting him and targeting him based on his race (Hispanic).  IAF, Tab 1 at 8, Tab 7 at 28, 37.  The agency also alleged his conduct was unbecoming because, following his incarceration, on October 11, 2019, the appellant submitted a timecard wherein "[he] coded Sick Leave (62) for [his absence on] September 30, 2019," a date on which he was incarcerated.  IAF, Tab 7 at 37.

¶3    Subsequently, the appellant admitted that the off-duty traffic accident he reported to his detail supervisor as the reason for his September 30th absence did not happen.  *Id.* at 71-72.  Based on that admission, the agency alleged the appellant lacked candor when he told his detail supervisor that he was absent on September 30, 2019, due to his falsely claimed accident.  *Id.* at 37.  The proposal set forth aggravating factors, such as the appellant's prior disciplinary record.  *Id.* at 41-44.  It also listed a number of mitigating factors.  *Id.*  Among the factors the proposing official listed as mitigating was that the appellant and his wife "recently lost an unborn child."  *Id.* at 44.

¶4    The appellant responded, both orally and in writing.  *Id.* at 23-31.  He argued that the penalty of removal was too severe because, as relevant here, his

behavior was affected by his and his wife's grief at the loss of their baby 1 week before he left for his detail at Mt. Hood. *Id.* at 28-31. The deciding official issued a removal decision, effective February 5, 2020, sustaining the agency's charge and removal penalty. *Id.* at 15-17. Attached to the removal decision was a "Douglas Factors Work Sheet" filled out by the deciding official, setting forth various aggravating and mitigating factors. *Id.* at 15-22. She acknowledged on the worksheet that the appellant and his wife's "recent loss of their unborn child" was a mitigating factor but found it did not "outweigh or negate the seriousness of the misconduct." *Id.* at 22.

¶5    The appellant filed this appeal to the Board, arguing that the agency did not prove that the actions at issue in the conduct unbecoming charge amounted to misconduct, that there was a nexus between this off-duty misconduct and the efficiency of the service, and that the penalty of removal was reasonable. IAF, Tab 1 at 4, 6; I-2 AF, Tab 6 at 5-6, 9-10. He also raised the affirmative defenses of race discrimination and reprisal for prior equal employment opportunity (EEO) activity. IAF, Tab 1 at 6; I-2 AF, Tab 6 at 10-11, Tab 8 at 3-5. In his closing argument, he further alleged, based in part on the deciding official's hearing testimony, that the agency violated his due process rights. I-2 AF, Tab 13, Hearing Recording, Day 2 (HR 2) (the appellant's closing argument).

¶6    The administrative judge issued an initial decision sustaining the specifications and charges related to the appellant's removal. I-2 AF, Tab 15, Initial Decision (ID) at 3-19. The administrative judge also determined that the agency established a nexus between the charged misconduct and the efficiency of the service and that the penalty of removal was reasonable. ID at 28-32. Finally, the administrative judge found that the appellant failed to prove his affirmative defenses. ID at 22-28. Consequently, the administrative judge affirmed the removal. ID at 1, 32.

¶7    The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. He argues that the agency violated his due process rights and

committed procedural error. *Id.* at 4-8. He also argues the administrative judge improperly limited the amount of time he had to present his closing argument. *Id.* at 7. The agency has responded. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶8        The parties do not challenge on review the administrative judge's determinations that the agency proved its charges by preponderant evidence, a nexus existed between the appellant's actions and the efficiency of the service, and the penalty of removal was reasonable. ID at 3-19, 28-32. They also do not dispute his finding that the appellant did not prove that his race or EEO activity was a motivating factor in the agency's decision to remove him. ID at 22-28. Rather, the appellant's arguments on review are limited to claims that the agency violated his due process rights and committed procedural error and that the administrative judge erred in limiting his closing argument. PFR File, Tab 1 at 4-8. Because, as discussed below, we agree with the appellant that the agency violated his due process rights by considering his "poor judgment" following the death of his unborn child as an aggravating factor without providing notice and an opportunity to respond, we must reverse his removal. In light of this finding, we find it unnecessary to address his other arguments on review.

The agency's removal process violated the appellant's due process rights.

¶9        The essential requirements of procedural due process are prior notice of the charges and evidence against the employee and a meaningful opportunity to respond to those charges and evidence. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). The appellant argued below and reasserts on review that the agency violated his due process rights when, as relevant here, the deciding official considered information not included in the notice of proposed removal. PFR File, Tab 1 at 4-6; HR 2 (the appellant's closing argument). Pursuant to *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279-80 (Fed. Cir. 2011), and *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d

1368, 1376-77 (Fed. Cir. 1999), a deciding official violates an employee's due process rights when she relies upon new and material ex parte information as a basis for her decision on the merits of a proposed charge or the penalty to be imposed. *Mathis v. Department of State*, 122 M.S.P.R. 507, ¶ 6 (2015).

¶10    In *Stone*, the U.S. Court of Appeals for the Federal Circuit identified the following factors as useful in determining whether, under the facts of a specific case, ex parte information is new and material:  (1) whether the ex parte communication introduces cumulative, as opposed to new, information; (2) whether the employee knew of the information and had an opportunity to respond; and (3) whether the communication was "of the type likely to result in undue pressure upon the deciding official to rule in a particular manner."  *Stone*, 179 F.3d at 1377.  Ultimately, the Board's inquiry in deciding whether an employee's due process rights have been violated is "whether the ex parte communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances."  *Id.* (italics omitted); *Mathis*, 122 M.S.P.R. 507, ¶ 7.

¶11    On review, the appellant asserts the agency did not disclose until the hearing that, in deciding on the penalty of removal, the deciding official relied on her conclusion that "the [a]ppellant used 'poor judgment' when he took the Mt. Hood detail so soon after his baby died."  PFR File, Tab 1 at 6.  The appellant briefly raised this alleged due process violation in his closing argument; however, the administrative judge did not address it in the initial decision.  HR 2 (the appellant's closing argument).  Therefore, we do so here, finding that the agency violated the appellant's due process rights in considering the appellant's "poor decision" in taking the detail.

¶12    Regarding the first *Stone* factor, the Board has explained that a deciding official does not violate an employee's due process rights when she considers issues raised by an employee in his response to the proposed adverse action and then rejects those arguments in reaching a decision.  *Mathis*, 122 M.S.P.R. 507,

¶ 9; *Grimes v. Department of Justice*, 122 M.S.P.R. 36, ¶ 13 (2014); *see* 5 C.F.R. § 752.404(g)(1) (stating that, in rendering a decision on a proposed adverse action, the agency will consider the reasons specified in the notice and any answer of the employee or his representative, or both, made to a designated official).  In so holding, the Board reasoned that an employee is not entitled to know the particular weight the deciding official will attach to his arguments raised in response to the proposed action.  *Mathis*, 122 M.S.P.R. 507, ¶ 9.  Although the appellant raised the issue of the death of his unborn child in response to the proposed removal, we find, under the circumstances here, the use of this unfortunate event as an aggravating factor was indeed new information, rather than a determination by the deciding official as to the weight to give this factor.  IAF, Tab 7 at 28-31.

¶13      Instead, we find the situation here similar to one in which an agency obtains ex parte information from a witness after the proposal notice was issued.  Such information may be considered new and material if it constitutes a significant departure from evidence already in the record and the deciding official considers it in reaching a decision.  *Mathis*, 122 M.S.P.R. 507, ¶ 11 (citing *Young v. Department of Housing and Urban Development*, 706 F.3d 1372, 1375-78 (Fed. Cir. 2013)).  In *Young*, the court held that the agency violated an appellant's due process rights when the deciding official relied on information she obtained from an individual the appellant had offered as a supporting witness that caused the deciding official to doubt the veracity of the witness.  706 F.3d at 1374-78.  In finding the information was new, rather than cumulative, the court observed that the deciding official described the information she obtained from the witness as a "huge" departure from prior statements.  *Id.* at 1376-77.

¶14      Here, the appellant briefly explained how the loss of his and his wife's unborn child affected his behavior in his written reply to the instant proposed removal.  IAF, Tab 7 at 28, 30.  During the hearing, the deciding official testified that in reaching her decision, she considered the appellant's "instances of poor

judgment" as an aggravating factor before describing, amongst other things, his decision to leave for a detail 1 week after the death of his unborn child. IAF, Tab 10, Hearing Recording, Day 1 (testimony of the deciding official). The appellant could not reasonably anticipate that the loss of his unborn child would be used as an aggravating factor to support his removal. The proposal notice identified that he "and his wife recently lost an unborn child" as a mitigating factor. IAF, Tab 7 at 44. The deciding official also indicated on her "Douglas Factors Work Sheet" that she considered the appellant's loss as a mitigating factor in assessing the appellant's removal. IAF, Tab 7 at 21-22. As such, the appellant could not have known that he should respond to this event as an aggravating factor. Therefore, we find the deciding official's consideration of his "poor judgment" in connection with the death of his child constitutes new and material information under the first *Stone* factor.[2]

¶15    Regarding the second *Stone* factor, whether the employee knew of the information and had a chance to respond to it, the Federal Circuit has found that ex parte information considered after an appellant responded to the deciding official and before she rendered her decision "more than satisfie[d] the second *Stone* factor considering that [the appellant] neither learned of the ex parte communication, nor had an opportunity to respond to it before the deciding official." *Young*, 706 F.3d at 1377 (italics omitted). Here, the agency did not reference the appellant's "poor judgment" in beginning his detail in the notice of proposed removal. IAF, Tab 7 at 37-44. Thus, his first opportunity to respond to this information was at the hearing. PFR File, Tab 1 at 6, Tab 3 at 11-12.

¶16    The agency's reliance on this factor in imposing his removal without providing him notice and an opportunity to respond cannot fairly be deemed

---

[2] To the extent that the agency argues in its response to the petition for review that his poor judgment was at issue in connection with the proposed removal, we are not persuaded. PFR File, Tab 3 at 11-12. The proposing official referenced the appellant's poor judgment only as it concerned the charged conduct, not in connection with the death of his child or his decision to begin the detail. IAF, Tab 7 at 40.

cumulative or immaterial to the deciding official's decision. *See Stone*, 179 F.3d at 1376-77. We recognize that the deciding official testified that she considered other instances of the appellant's "poor judgment" in making her removal decision. HR 2 (testimony of the deciding official). Such instances included the appellant's decision, while on detail, to go drinking with his wife and then arguing with her immediately preceding his arrest on September 29, 2019. *Id.* These matters were referenced in the materials underlying the appellant's removal. IAF, Tab 7 at 49-51, 58. However, the decision to take a detail following the death of a child is a private one that cannot be compared to engaging in public behavior resulting in arrest. Further, the agency's specific use of the death of the appellant's child as mitigating in the proposed removal supports the conclusion that these other instances of alleged poor judgment are not comparable. *Id.* at 44. Thus, the agency violated the appellant's due process rights by denying him notice of the specific information considered and an opportunity to respond. *See Solis v. Department of Justice*, 117 M.S.P.R. 458, ¶¶ 4, 9-10 (2012) (concluding an agency violated an appellant's due process rights by denying him notice that his possible *Giglio* impairment was considered to be an aggravating factor).

¶17    Regarding the third *Stone* factor, there is no evidence in the record that the information resulted in undue pressure on the deciding official to remove the appellant. Nonetheless, our reviewing court has emphasized that whether the ex parte communication was of the type likely to result in undue pressure "is only one . . . factor[] and is not the ultimate inquiry." *Ward*, 634 F.3d at 1280 n.2. Specifically, the court recognized that "the lack of such undue pressure may be less relevant to determining whether the ex parte communications deprived the employee of due process where . . . the [d]eciding [o]fficial admits that the ex parte communications influenced [her] penalty determination." *Id.* Therefore, while the appellant has not pointed to evidence of undue pressure, the deciding

official's testimony is clear evidence of the materiality of the appellant's "poor judgment" in her removal determination.

¶18    Consequently, because the agency violated the appellant's due process rights, the appellant's removal must be reversed, and he must be afforded a "new constitutionally correct removal procedure." *Ward*, 634 F.3d at 1280. Based on our disposition, we decline to address the appellant's other arguments on review.

## ORDER

¶19    We ORDER the agency to cancel the appellant's removal and to restore him effective February 5, 2020. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶20    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶21    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶22    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition

should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶23 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE OF APPEAL RIGHTS[3]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b).

---

[3] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. [5 U.S.C. § 7702](b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under [5 U.S.C. § 2302](b)(8) or other protected activities listed in [5 U.S.C. § 2302](b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[4] The court of appeals must <u>receive</u> your petition for

---

[4] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on

review within **60 days** of the <u>date of issuance</u> of this decision.  <u>5 U.S.C.</u> <u>§ 7703</u>(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                              /s/ for
                                           _____
                                           Jennifer Everling
                                           Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**

**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.      Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.      The following information must be included on AD-343 for Restoration:

    a.      Employee name and social security number.
    b.      Detailed explanation of request.
    c.      Valid agency accounting.
    d.      Authorized signature (Table 63).
    e.      If interest is to be included.
    f.      Check mailing address.
    g.      Indicate if case is prior to conversion.  Computations must be attached.
    h.      Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.      Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.      Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.      Outside earnings documentation statement from agency.
4.      If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.      Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.      If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.      If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.      Must provide same data as in 2, a-g above.
    b.      Prior to conversion computation must be provided.
    c.      Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.